## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

EUGENE SCALIA, Secretary of Labor,
United States Department of Labor

    **Plaintiff**

       v.

EVOLUTION QUALITY GUARD, INC.,
E.Q.G. PROTECTION AGENCY & ORDER
CORP.; EXCELLENT QUALITY GUARD
CORP.; EXCELLENT QUALITY GUARD
SERVICES, INC.; ORLANDO MERCED
MORALES, Individually; and JOEL
VELAZQUEZ CRUZ, Individually,

    **Defendants**

**CIVIL NO.** 17-1210 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

This matter comes before the Court on the Secretary of Labor's unopposed *Motion for Default Judgment* (Docket No. 70). Based on the following findings of fact and conclusions of law, the Court **GRANTS** the Secretary of Labor's Motion.

### I. BACKGROUND

On February 10, 2017, the U.S. Secretary of Labor (the "Secretary") brought the present action against Evolution Quality Guard, Inc.; E.Q.G. Protection Agency & Order. Corp., Excellent Quality Guard Corp.; Excellent Quality Guard Services, Inc.; (the "Corporate Defendants"); Orlando Merced-Morales, and Joel Velazquez-Cruz (collectively, the "Defendants"). (Docket No. 1).

The Secretary amended his *Complaint* on April 25, 2017. (Docket No. 13). Defendants were engaged in the business of employing and providing private security guards to commercial and residential clients in the Commonwealth of Puerto Rico. Id. ¶¶ 4-14. On behalf of Defendants' employees, the Secretary seeks to recover unpaid back wages, liquidated damages, civil money penalties, and to enjoin acts and practices that violate the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, ("FLSA"), and to obtain other appropriate relief. Id. at 11-12.

The case was transferred to the undersigned on June 13, 2019. (Docket No. 55). The proceedings were stayed as to co-defendant Evolution Quality Guard Services, Inc. from October 3, 2018 through July 30, 2019. (Docket Nos. 49 and 56). Upon the Secretary's motion, default was entered upon Evolution Quality Guard, Inc., E.Q.G. Protection Agency & Order. Corp., Excellent Quality Guard Corp., Excellent Quality Guard Services, Inc. for failing to inform the Court of their legal representation and defend their action on July 31, 2019 and as amended on September 19, 2019. (Docket Nos. 47, 56, 58 & 63). Default was also subsequently entered as a discovery sanction against Messrs. Merced-Morales and Velazquez-Cruz on November 6, 2019 (Docket Nos. 64, 68-69).

The Secretary moved for entry of default judgment on December 20, 2019. (Docket No. 70). Defendants did not oppose despite being served with the Secretary's Motion. (Docket Nos. 72-73).

## II. FINDINGS OF FACT

To make findings of fact, the Court has taken as true the well-plead allegations of the *First Amended Complaint* and considered the declaration under penalty of perjury of Ms. Ivonne Reyes and the documents attached to both the *Complaint* and Ms. Reyes' declaration. (Dockets Nos. 1, 13 and 70-1 to 70-17). Having reviewed said allegations and documents, the Court enters the following findings of fact:[1]

1. The Secretary of Labor brought this suit to restrain violations of the FLSA and recover back wages and liquidated damages. (Docket No. 13 ¶ 3).

2. Defendant Evolution Quality Guard Inc. ("Evolution Quality Guard") is a corporation organized under the laws of the Commonwealth of Puerto Rico, having its last known principal office and place of business at Calle Verona #1162, Urb. Villa Capri, San Juan, P.R. 00924, where it engaged in the business of providing security services. Id. ¶ 4.

3. Defendant E.Q.G. Protection Agency & Order Corp. ("E.Q.G. Protection Agency") is a corporation organized under the laws of the Commonwealth of Puerto Rico, having its last known principal office and place of business at Carr. 860,

---

[1] References to a specific finding of fact shall be cited in the following manner: (Fact ¶ _).

Km 0.6 Metropolis, Carolina P.R. 00983, within the jurisdiction of this Court, where it engaged in the business of providing security services. Id. ¶ 5.

4. Defendant Excellent Quality Guard Corp. ("Excellent Quality Guard Corp.") is a corporation duly organized under the laws of the Commonwealth of Puerto Rico, having its principal office and place of business at Carr 848 Km 1.4 Bo Saint Just, Trujillo Alto, P.R. 00976, within the jurisdiction of this Court, where it is engaged in the business of providing security services. Id. ¶ 6.

5. Defendant Excellent Quality Guard Services, Inc. ("Excellent Quality Guard Services") is a corporation duly organized under the laws of the Commonwealth of Puerto Rico, having its principal office and place of business at Plaza Iturregui, 1135 Ave 65 Infanteria, San Juan, P.R. 00924, where it is engaged in the business of providing security services. Id. ¶ 7.

6. Evolution Quality Guard, E.Q.G. Protection Agency, Excellent Quality Guard Corp., and Excellent Quality Guard Services (the "corporate defendants") have regulated the employment of all persons employed by them, acted directly and indirectly in the entities' interest in relation to the employees. Id. ¶ 8.

7. Defendant Orlando Merced-Morales ("Merced-Morales") was in active control and management of all the corporate defendants. Defendant Merced-Morales regulated the employment of all persons employed by him. He had the authority to hire, fire, and supervise employees, control their hours worked, determine employee compensation, and otherwise act directly and indirectly in the interest of all the corporate defendants in relation to the employees during the relevant time. Id. ¶ 9.

8. Defendant Joel Velazquez-Cruz ("Velazquez-Cruz") is the president of E.Q.G. Protection Agency. Id. ¶ 12.

9. Defendant Velazquez-Cruz was in active control and management of E.Q.G. Protection Agency and Excellent Quality Guard Corp. Defendant Velazquez-Cruz regulated the employment of all persons employed by him. He had the authority to hire, fire, and supervise employees, control their hours worked, determine employee compensation, and otherwise act directly and indirectly in the interest of E.Q.G. Protection and Excellent Quality Guard Corp. in relation to the employees during the relevant time.

10. Co-defendants Merced-Morales and Velazquez-Cruz were residents of the Commonwealth of Puerto Rico at the time of the Complaint. Id. ¶¶ 10 and 14.

11. Defendants' employees are identified in Exhibit A to the Complaint. Id. at 14-23.

12. The corporate defendants were engaged in the business of providing security services doing business with the same initials "E.Q.G." and interchangeably as Evolution Quality Guard, E.Q.G. Protection Agency, Excellent Quality Guard Corp., and Excellent Quality Guard Services, Inc. For example, E.Q.G. Protection Agency has deposited checks made payable to Evolution Quality Guard in E.Q.G. Protection Agency's bank account, and vice versa. Id. ¶ 16.

13. The corporate defendants also shared or had overlapping clientele and employees. Whether doing business as Evolution Quality Guard, E.Q.G. Protection Agency, Excellent Quality Guard Corp., or Excellent Quality Guard Services, defendants assigned their employees to provide security at Cupey Professional Mall, Urbanización Los Arboles, and 650 Plaza, among other locations. Id. ¶ 17.

14. The corporate defendants were managed by the same individuals, including defendants Merced-Morales and Velazquez-Cruz and a manager of human resources, Michelle Velez. Milikza Santiago-Huertas, who is identified as defendant Excellent Quality Guard Services, Inc.'s president on its corporate documents, was also involved in

the operations of Evolution Quality Guard, including developing and managing client relationships. Id. ¶ 18.

15. The enterprise (and each corporate defendant) had an annual gross volume of sales made or business done in an amount not less than $500,000.00 for the period covered by the *First Amended Complaint*. Id. ¶ 19.

16. The enterprise had employees handling and using goods or materials that have been moved in or produced for commerce, such as radios, weapons, uniforms, or vehicles. Id. ¶ 20.

17. From November of 2013 through the filing of the *Complaint*, Defendants employed armed and unarmed security guards to provide security to commercial and residential entities in the Commonwealth of Puerto Rico. Id. ¶ 22.

18. At all relevant times, Defendants required their employees employed as security guards to wear uniforms. Id. ¶ 23.

19. At all relevant times, Defendants prohibited their employees from working for other security guard companies or similar competitor entities. Id. ¶ 24.

20. At all relevant times, Defendants entered into contracts with their clients to provide guard services and to supply the necessary security guards at specific client locations. Id. ¶ 25.

21. At all relevant times, defendants assigned their employees to provide these services at specific client locations. Id. ¶ 26.

22. Defendants set their employees' work schedules and required them to sign-in and sign-out on daily attendance records. Id. ¶ 27.

23. Defendants set their employees' rate of pay. Id. at 28.

24. Defendants typically paid their employees a regular rate of pay of $7.25 per hour. Id. ¶ 29.

25. Defendants' employees employed as security guards have no opportunity for profit or loss. Id. ¶ 30.

26. Despite the U.S. Department of Labor's Wage and Hour Division ("Wage and Hour Division") having previously found that Evolution Quality Guard violated the FLSA from April 2012 to April 2013, Defendants continued to misclassify their security guard employees as "professional services," or independent contractors, and not as employees. Id. ¶ 31.

27. Defendants' employees employed as security guards were an integral part of their business and without them, Defendants would not be able to provide security guard services. Id. ¶ 32.

28. Between November 2013 and the present, Defendants' employees typically worked in excess of 40 hours, ranging

from approximately 42 to 84 hours in a workweek. They typically worked 8-hour or 12-hour shifts, four to seven days per week. Id. ¶ 33.

29. For the workweeks that exceeded 40 hours, defendants failed to pay their employees time and one half of their regular rate of pay for the hours that exceeded 40. Instead, defendants paid their employees at their regular rates of pay ("straight time"). Id. ¶ 34.

30. For the workweeks ending August 16, 2015 and August 30, 2015, employees who worked a total of 56 hours at their assigned security posts were only paid at their regular rate despite working 16 overtime hours in that week. Id. ¶ 35.

31. For the workweek ending November 15, 2015, employees who worked a total of 44 hours at their assigned security posts were only paid at their regular rate despite working 4 overtime hours in that week. Id. ¶ 36.

32. In 2017, employees who worked a total of at least 42 hours in a workweek at their assigned security posts were only paid at their regular rate despite working at least 2 overtime hours in that week. Id. ¶ 37.

33. Defendants' practice of paying straight time for hours in excess of 40 hours continued even after they were advised by the Wage and Hour Division that they were required to

pay their employees overtime. These violations were ongoing at the time of the filing of the *Complaint*. Id. ¶ 38.

34. From November 2015 through at least October 2016, Defendants failed to pay any wages to approximately 52 employees for at least one and as many as 12 workweeks. For example, for the workweeks ending April 17, 2016 and April 24, 2016, defendants failed to pay at least 21 employees any wages, despite working between 32 to 70 hours in a workweek. Id. ¶ 39.

35. At all relevant times beginning on or before November 2013, Defendants did not maintain accurate and complete records, including employee addresses, total hours worked each workweek, and total earnings. Id. ¶ 40.

36. Despite requiring their employees to sign-in and sign-out on daily attendance sheets and in attendance notebooks, defendants created false time records that inaccurately listed the total weekly hours worked by employees. Id. ¶ 41.

37. Defendants provided the falsified time records to the Wage and Hour Division. Id. ¶ 42.

38. The Wage and Hour Division previously investigated defendant Evolution Quality Guard from April 2012 to April 2013. In June 2013, codefendants Evolution Quality Guard and Orlando Merced-Morales agreed to and did pay a total

of $24,250.79 in back wages to 119 employees for their failure to comply with the minimum wage and overtime provisions of the FLSA. Id. ¶ 43.

39. Thus, Defendants knew of their obligations to pay their employees in compliance with the FLSA and to keep accurate records. Id. ¶ 44.

40. Accordingly, Defendants' failure to pay minimum wage and overtime and falsification of time records that has led to the filing of this *Complaint* are willful and repeated. Id. ¶ 45.

41. On September 15, 2016, the Wage and Hour Division issued a civil money penalty assessment to defendants E.Q.G. Protection Agency, Joel Velazquez-Cruz, Orlando Merced-Morales and non-defendant Michelle-Velez in the amount of $226,442.00 pursuant to section 16(e)(2) of the Act, 29 U.S.C. § 216(e)(2). Id. ¶ 46.

42. Assistant District Director David G. Marin of the Wage and Hour Division personally served defendant Velazquez-Cruz, individually and as owner or officer of defendant E.Q.G. Protection Agency, a notice of determination assessing the $226,442.00 in civil money penalties for a total of 401 employees on September 15, 2016. Id. ¶ 47.

43. Defendants Velazquez-Cruz and E.Q.G. Protection Agency failed to file an exception within 15 days of the notice

of determination of civil money penalties in accordance with the requirements set forth in 29 U.S.C. § 216(e)(4) and 29 C.F.R. § 580.6. Id. ¶ 48.

44. Pursuant to a "Statute of Limitations Tolling Agreement," any legal proceeding "brought by the Secretary or affected employees following November 22, 2015 shall be deemed to have been filed 727 days prior to the actual filing date." Id. ¶ 49.

45. The *Complaint* filed on February 10, 2017 is deemed to have been filed 727 days prior to the actual filing date. Id. ¶ 50.

46. The Wage and Hour Division calculated the back wages owed because of Defendants' minimum wage and overtime calculations the period from November 25, 2013 to August 14, 2016. (Docket No. 70-1 ¶ 14).

47. The Wage and Hour Division's computations show that Defendants' owe their employees **$74,872.57** in unpaid minimum wage compensation for the period between November 25, 2013 and August 14, 2016. (Docket Nos. 70-1 ¶¶ 14-20; 70-2 at 10).

48. The Wage and Hour Division's computations show that Defendants' owe their employees **$282,970.20** in unpaid overtime back wages for the period between November 25, 2013 and August 14, 2016. Id.

49. The Wage and Hour Division Computations show that Defendants owe their employees **$357,842.77** in liquidated damages. (Docket Nos. 70-1 ¶ 20; 70-2 at 10).

50. On September 15, 2016, the Wage and Hour Division issued a civil penalty assessment of **$226,442.00** to Defendants E.Q.G. Protection Agency & Order Corp., Joel Velazquez-Cruz and Orlando Merced-Morales. (Docket No. 70-1 ¶ 21).

51. On that same date, the notice of the civil penalty determination was personally served upon Defendant Joel Velazquez-Cruz individually as an owner or officer of E.Q.G. Protection Agency & Order Corp. Defendants did not respond to the notice of determination. (Docket Nos. 70-1 ¶ 21; 70-17).

### III. LEGAL STANDARD

**A. Default Judgment under Fed. R. Civ. P. 55.**

"After an entry of default, a court may examine a plaintiff's complaint to determine whether it alleges a cause of action. In making that determination **it must assume that all well pleaded factual allegations are true**." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (citations omitted). *See also* Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability[.]"). However, entry of default does not

mean that a plaintiff is automatically entitled to damages. *See* Boland v. Elite Terrazo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) ("Default does not, however, establish liability for the amount of damage that the plaintiff claims.")

Fed. R. Civ. P. 55(b) provides that when entering a default judgment,

> The court may conduct hearings or make referrals —preserving any federal statutory right to a jury trial— when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

As evinced by the text of the rule, while the Court *can* hold a hearing, it is **not obligated to do so if there is basis for the damages awarded in the default judgment**. *See* In re The Home Restaurants, Inc., 285 F. 3d 111, 114 (1st Cir. 2002) (holding that a court with jurisdiction has discretion to order a default judgment without a hearing of any kind if "the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object"); Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")

Therefore, no hearing is necessary when "arriving at the judgment amount involves nothing more than arithmetic — the making of computations which may be figured from the record." *See* HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988) (finding no abuse of discretion where the amount of damages was calculated from mortgage and loan agreements, certifications, and other documents). "[E]ven in the face of apparently unliquidated claims," a district court can forego a Rule 55(b)(2) hearing. KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 21 (1st Cir. 2003). Instead of holding a hearing, the court "may rely on detailed affidavits or documentary evidence" to determine the amount of plaintiff's damages. *See* Boland v. Elite Terrazo Flooring, 763 F. Supp. 2d 64, 68 (D.D.C. 2011); *see also* Dundee Cement Company v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (holding that the district court did not abuse discretion by failing to hold hearing when amount claimed was "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits"); Formatech, Inc., 2019 WL 7165930, at *8 (B.A.P. 1st Cir. 2019); Hasbro, Inc. v. Chang, 2006 WL 1549052, at *3 (D.R.I. 2006).

**B. Fair Labor Standards Act (FLSA).**

The Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C.A. § 201 *et seq.*, seeks to "protect all covered workers from

substandard wages and oppressive working hours." Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2121 (2016) (quoting Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739, (1981)). To do so, the FLSA establishes "federal minimum-wage, maximum-hour, and overtime guarantees." Giguere v. Port Res. Inc., 927 F.3d 43, 45 (1st Cir. 2019).

With regards to overtime guarantees, the Act requires employers to pay overtime compensation to covered employees who surpass a 40-hour work week, or the work week established by the employer (in this case, 35 hours per week). See 29 U.S.C.A. § 207. Furthermore, the "rate of overtime pay must be 'not be less than one and one-half times the regular rate' of the employee's pay." Encino Motorcars, LLC, 136 S. Ct. at 2121 (quoting 29 U.S.C. § 207(a)). However, for said requirements to apply, the employees must be employed by "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C.A. § 207(a).

Thus, the most important elements of an FLSA claim are that: "(1) plaintiffs must be employed by the defendants; (2) the work involved interstate activity; and […] (3) plaintiffs 'performed work for which they were under-compensated.'" Santos Cordova v. Municipality of San Juan, 2017 WL 6542255, at *9 (D.P.R. 2017) (quoting Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013)). Under-compensated employees are not the only individuals with standing to bring such claims under the Act. "The

FLSA authorizes the Secretary of Labor to recover on behalf of employees' unpaid wages and overtime compensation plus an equal amount in liquidated damages." Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007) (citing 29 U.S.C. § 216(b), (c)). Thus, to prevail under the FLSA's provisions, the plaintiff (i.e. the employee or the Secretary of Labor) alleging unpaid overtime wages must prove that the employee worked longer than their assigned hours and that they were not compensated accordingly by their employer.

Lastly, it is worth noting that Section 203(d) of the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employee in relation to an employee." 29 U.S.C.A. § 203(d). "Accordingly, there may be multiple 'employers' who are simultaneously liable for compliance with the FLSA." Chao, 493 F.3d at 34 (citing Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983) and Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir.1998)). See also Pena-Vega v. MVM, Inc., 2008 WL 11357900, at *5 (D.P.R. 2008).

## IV. CONCLUSIONS OF LAW

Based on the well-pled and uncontroverted allegations of the *First Amended Complaint* and the above findings of fact, the Court concludes that Evolution Quality Guard Inc., E.Q.G. Protection Agency & Order Corp., Excellent Quality Guard Corp., Excellent Quality Guard Services Inc., Mr. Orlando Merced-Morales and Mr.

Joel Velazquez-Cruz have regulated the employment of all persons employed by them, acting directly and indirectly in the entities' interest in relation to the employees. (Facts ¶¶ 6, 7, 9, 18-19, 22, 23-25). Thus, **the aforementioned Defendants are joint employers** of the employees listed in Exhibit A of the *Complaint* **within the meaning of section 203(d) of the FLSA**. Id. The Court also concludes that **Defendants are an enterprise engaged in commerce for purposes of the FLSA and their employees are covered by the FLSA**. (Facts ¶¶ 2-5, 12-13, 15-17, 20-21).

Pursuant to the FLSA, employers must pay each employee a minimum hourly wage of $7.25 an hour for all hours worked in any workweek. *See* 29 U.S.C.A. § 206 (a)(1)(C). The FLSA also requires employers to pay each employee overtime at one and one-half times their regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C.A. § 207(a). An employee's "regular rate" of pay, as used in the FLSA, cannot be lower than any applicable state or local minimum hourly wage, and the term is construed to mean the regular rate at which an employee is lawfully employed. *See* 29 C.F.R. § 778.5. Based on the above findings of fact, the Court finds that **Defendants did not comply with the overtime provisions of the FLSA**. (Facts ¶¶ 28-34). *See also* Docket No. 70-1 ¶ 12.

Additionally, the FLSA mandates that employers make, keep, and preserve records of the persons employed as well as their

wages, hours, and other information relating to their employment. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5. Thus, an employer is also held liable if "the employer prevents or discourages accurate reporting in practice." Garcia v. Draw Enterprises III, LLC., 2018 WL 6045206, at *5 (N.D. Ill. Nov. 19, 2018) (quotation omitted). Consequently, knowledge of overtime work can still be imputed to the employer when its "supervisors encourage artificially low reporting or squelch truthful reports of overtime worked." Holt v. Jefferson Cty. Comm. for Econ. Opportunity, 2019 WL 1239855, at *13 (N.D. Ala. 2019 (citing Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 801 (11th Cir. 2015)). Based on the above findings of fact, the Court concludes that **Defendants did not comply with the record keeping provisions of the FLSA**. (Facts ¶¶ 35-40).

A violation of the FLSA is considered willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). *See also* Herman v. Hector I. Nieves Transport, Inc., 91 F. Supp. 2d 435, 445 (D.P.R. 2000), aff'd, 244 F. 3d 32 (1st Cir. 2001). The Secretary's *First Amended Complaint* alleges that Defendants created false time records—and then provided them to the Department of Labor—in an effort to mimic compliance with the FLSA. (Facts ¶¶ 35-37); *See also* Hotel Oasis, 493 F. 3d at 35 (affirming willfulness finding where employers

intentionally manipulated records). Based on the above findings of fact, **the Court concludes that Defendants willfully violated the FLSA.** (Facts ¶¶ 36-40).

Turning to the issue of damages, the Secretary produced the Declaration under Penalty of Perjury of Ivonne Rivera, a Wage Hour Investigator for the Caribbean District Office of the United States Department of Labor. (Docket No. 70-1). Ms. Rivera was the Wage and Hour Division's lead investigator assigned to investigate Defendants' compliance with the FLSA and perform the calculations sustaining the Secretary's request for default judgment. Id. ¶¶ 1 and 3. Ms. Rivera's Declaration Under Penalty of Perjury explains the methodology underpinning her calculations in detail and is accompanied by exhibits reflecting the results of the same for each of Defendants' employees during the relevant time-period and other supporting documents. (Docket Nos. 70-1 ¶¶ 14-20; 70-2 – 70-16). Considering this sworn statement and the detailed documentary evidence accompanying it, the Court concludes that **the Secretary has adequately established the amount of damages sought for back pay of minimum wages ($74,872.57) and back pay of overtime wages ($282,970.20).** (Facts ¶¶ 47-48).

Given that Plaintiff proved that Defendants violated Section 207 of the FLSA, the Court must grant liquidated damages. *See* 29 U.S.C. § 216(b). Liquidated damages are mandatory unless the Defendants establish both that: (1) the acts or omissions committed

were in good faith; and (2) they had reasonable grounds for believing that the acts or omissions were not in violation. *See* Hector I. Nieves Transp., Inc., 91 F. Supp. 2d at. "Double damages will be the norm, and single damages will be the exception." Herman v. Hogar Praderas de Amor, Inc., 130 F. Supp. 2d 257, 267 (D.P.R. 2001). Pursuant to the Act, these damages are "meant to compensate employees for the losses that the employees have suffered by reason of not receiving money due them at the time that it was due." Hector I. Nieves Transport, 91 F. Supp. 2d at 449. **Based on the above findings of fact, the Court concludes that the Secretary is entitled to liquidated damages in the amount of $357,842.77, which twice the amounts owed by Defendants to their employees for overtime pay and minimum wage.** (Facts ¶¶ 36-40 & 49).

Defendants Velazquez-Cruz and E.Q.G. Protection Agency were personally served on September 15, 2016 with a notice of civil money penalty assessment. (Fact ¶ 51). They failed to file an exception within 15 days of receiving the notice or voluntarily remit payment. Id. *See also* 29 U.S.C. § 216(e)(4). Accordingly, pursuant to section 16(e)(4) of the FLSA, the Secretary's determination of $226,442.00 in civil money penalties **became final and not subject to administrative or judicial review**. *See* 29 U.S.C. § 216(e)(4), 29 C.F.R. § 580.5. The Court also concludes that the Secretary has shown entitlement to the amount claimed in civil penalties ($226,442.00). (Facts ¶ 50-51). *See also* Docket Nos. 70-

1 ¶ 21; 70-17. Thus, **Defendants Velazquez-Cruz and E.Q.G.
Protection Agency are liable for $226,442.00 in civil money
penalties.** Id. *See also* 29 C.F.R. § 580.18(2).

Lastly, the Secretary's *First Amended Complaint* and *Motion
for Default Judgment* included a petition for injunctive relief
against future violations by Defendants pursuant to Section 217 of
the FLSA. (Docket Nos. 13 at 11-12; 70 ¶ 30). The record shows
that the Corporate Defendants are no longer operating. (Docket No.
61). However, "[t]he fact that defendants are inoperative does not
*ipso facto* render this cause moot." Wirtz v. Flame Coal Co., 321
F.2d 558, 561 (6th Cir. 1963). Future violations of the FLSA can
still occur because "there is nothing to prevent [D]efendants from
resuming their operations or beginning anew." Chao v. BDK Indus.,
L.L.C., 296 B.R. 165, 169 (C.D. Ill. 2003) (citations omitted).
Furthermore, there is "no affirmative indication" on the record
that Defendants will refrain from operating once again. Id.

When determining whether a prospective injunction pursuant to
Section 217 of the FLSA is appropriate, courts must consider the
following factors:

> (1) the employer's prior and present conduct;
> (2) any pattern of repetitive violations; (3)
> an employer's intent to violate the FLSA; (4)
> the employer's good faith attempt to comply
> with the FLSA; (5) whether the employer
> complied once it became aware of
> the FLSA's requirements; (6) efforts to
> prevent recurrence; (7) the threat of

> violations in the future; and (8) absence of
> bad faith.

Acosta v. Special Police Force Corp., 295 F. Supp. 3d 47, 65
(D.P.R. 2018) (quoting Hogar Praderas de Amor, Inc., 130 F.Supp.2d
at 269). The Secretary has shown that Defendants have willfully
and repeatedly violated multiple provisions of the FLSA, even after
being investigated by the Wage and Hour Division and notified that
they were not in compliance with those provisions. (Facts ¶¶ 36-
40). Defendants' continued violations, despite their knowledge of
the Act's requirements, indicates both bad faith and that the
threat of future violations is high. Thus, **should Defendants resume
operations, they are hereby enjoined from future FLSA violations.**

### V. ORDER

For the foregoing reasons, the Secretary's *Motion for Default
Judgment* is **GRANTED.** The Court awards the Secretary damages against
Evolution Quality Guard, Inc.; E.Q.G. Protection Agency & Order
Corp., Excellent Quality Guard Corp.; Excellent Quality Guard
Services, Inc.; Orlando Merced-Morales, and Joel Velazquez-Cruz
as follows:

A. **$74,872.57** in unpaid minimum wage compensation owed to
   Defendants' employees for the period between November 25,
   2013 and August 14, 2016;

B. **$282,970.20** in unpaid overtime back wages owed to Defendants' employees for the period between November 25, 2013 and August 14, 2016;

C. **$357,842.77** in liquidated damages owed to Defendants' employees.

The Court also awards to the Secretary against Defendants E.Q.G. Protection Agency & Order Corp., Joel Velazquez-Cruz and Orlando Merced-Morales the sum of **$226,442.00** due to the unpaid civil penalty assessment.

Lastly, and pursuant to Section 217 of the FLSA, the Court issues a permanent injunction restraining Evolution Quality Guard, Inc., E.Q.G. Protection Agency & Order Corp., Excellent Quality Guard Corp., Excellent Quality Guard Services, Inc., Mr. Orlando Merced-Morales, Mr. Joel Velazquez-Cruz, their officers, agents, servants, employees, and those persons in active concert or participation with defendants, from violating the provisions of sections 206, 207, 211(c), 215(a)(2), and 215(a)(5) of the Fair Labor Standards Act.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 27th day of March 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge